**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Edward McCann, | : | Civil Action No: 12-2025 |
| Plaintiff, | : | |
| | : | The Honorable John E. Jones, III |
| v. | : | |
| | : | |
| Delta Outsource Group, Inc. and | : | Electronically Filed |
| Springleaf Financial Services, Inc., | : | |
| Defendants. | : | |

---

**BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF
PLAINTIFF'S COMPLAINT AND STAY LITIGATION, INCLUDING
ALL DISCOVERY, PENDING ARBITRATION**

---

Robert J. Hannen, Esquire
PA ID No. 63432
Eckert Seamans Cherin & Mellott, LLC
Suite 200, Summitt Corporate Center
1001 Corporate Drive
Canonsburg, PA  15317-8563
Telephone:  724-873-2870
Facsimile:   724-743-2901
Date:  November 13, 2012    E-mail:     rhannen@eckertseamans.com

{L0498421.1}

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

I.  INTRODUCTION. ...........................................................................1

II.  PROCEDURAL HISTORY. ............................................................1

III.  FACTUAL BACKGROUND.............................................................2

    A.  Plaintiff Purchased Jewelry on Credit....................................2

    B.  Plaintiff Agreed to Arbitrate All Claims Related to the Jewelry Purchase..............................................................................3

    C.  Plaintiff Defaulted on the Retail Charge Agreement. ...........5

IV.  STATEMENT OF QUESTIONS INVOLVED. .............................5

V.  ARGUMENT...................................................................................5

    A.  The FAA Applies to and Governs the Agreement. ................6

    B.  The Agreement Must Be Enforced Under the FAA. ............7

    C.  The Court Must Appoint a Substitute Arbitrator to Hear the Dispute................................................................................13

    D.  The Proceedings Must Be Stayed Pending Resolution of Arbitration. .........................................................................15

VI.  CONCLUSION..............................................................................16

# TABLE OF AUTHORITIES

**Page**

## Cases

*14 Penn Plaza LLC v. Pyett,* 556 U.S. 247 (2009) ....................................................9

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ...................................8

*AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740 (2011).........6, 8

*AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643 (1980)............................11

*Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622 (3d Cir. 2003) ...............12

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217 (11th Cir. 2000)....................15

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ..............................................7

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).............................9, 10, 11

*G&V Gen. Contractors, Inc. v. Goode*, Civ. Action No. 86-7048, 1987 U.S. Dist. LEXIS 3097, at *20-22 (E.D. Pa. Apr. 21, 1987)................................16

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) ................................9

*In re Jim Walter Homes, Inc.*, 207 S.W.3d 888 (Tex. App. 2006)...........................7

*Khan v. Dell, Inc.*, 669 F.3d 350 (3d Cir. 2012)..............................................passim

*KPMG LLP v. Cocchi*, 132 S. Ct. 23 (2011) ...........................................................8

*Langfitt v. Jackson*, 644 S.E.2d 460 (Ga. App. 2007) .............................................7

*Ludgate v. Bingham*, No. 3:11-cv-0071, 2012 U.S. Dist. LEXIS 126399, at *16 (M.D. Pa. Sept. 6, 2012)......................................................................16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)..................................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ..........11

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. ___, 130 S. Ct. 2772 (2010)..................6

*Rodriguez v. Am. Techs., Inc.*, 39 Cal. Rptr. 3d 437 (Cal. Ct. App. 2006)...............7

*Southland Corp. v. Keating*, 465 U.S. 1 (1984)......................................................6, 8

*Thomas O'Connor & Co. v. Ins. Co. of N. Am.*, 697 F. Supp. 563 (D. Mass. 1988) ...................................................................................................................7

*Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529 (3d Cir. 2005)................10, 11

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989)............................................................................................................6

**Statutes**

9 U.S.C. § 1 ...............................................................................................................1, 5

9 U.S.C. § 2 .............................................................................................................passim

9 U.S.C. § 3 .............................................................................................................15, 16

9 U.S.C. § 4 ...............................................................................................................9, 10

9 U.S.C. § 5 .............................................................................................................13, 14

## I.      INTRODUCTION.

Before the Court is Springleaf Financial Services, Inc.'s ("Springleaf")

Motion to Compel Arbitration of Plaintiff Edward McCann's ("Plaintiff")

Complaint (the "Motion").  (The parties hereinafter may be referred to as "the

Parties.")  Springleaf submits this Brief in Support of the Motion, respectfully

requesting that the Court enter an Order compelling arbitration of Plaintiff's

Complaint and staying the proceedings pending arbitration.  Springleaf is entitled

to the relief it seeks because Plaintiff entered into a written retail credit agreement

that contains clear and concise language requiring that any disputes be resolved by

arbitration upon the election of either party.  The conspicuous arbitration

agreement provides clear and adequate notice that the Parties are obligated to

arbitrate covered disputes in accordance with the terms of the arbitration

agreement, and that all disputes between the Parties are governed by the Federal

Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA").  All claims in Plaintiff's

Complaint are covered by the arbitration agreement between the Parties.

Therefore, Plaintiff should be compelled to arbitrate his claims.

## II.     PROCEDURAL HISTORY.

Plaintiff initiated this action against Springleaf and Delta Outsource Group,

Inc. on October 9, 2012 by filing the Complaint.  (Doc. 1.)  In Count I, Plaintiff

alleges violations of the Unfair Trade Practices and Consumer Protection Law, 73

P.S. §§ 201-1 - 201-9, ("UTPCPL").  In Count II, Plaintiff alleges violations of the

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, ("FDCPA"). (Count

II).  Plaintiff seeks a judgment for actual and compensatory damages, treble

damages, costs of litigation and attorney's fees, punitive damages, and such other

relief that the Court deems proper.  Neither Defendant has filed a responsive

pleading as of the filing of this Motion.

## III.   FACTUAL BACKGROUND.

### A.   Plaintiff Purchased Jewelry on Credit.

Springleaf, formerly known as American General Financial Services, is in

the business of making consumer loans.  It has branches all over the country,

including the Commonwealth of Pennsylvania.  Part of Springleaf's business is

maintaining retail financing relationships with a variety of consumer retail dealers,

through which it facilitates financing for tangible goods, such as jewelry, through

retail installment transactions.  Retail installment transactions include retail charge

agreements (open-end revolving credit sale agreements) or retail installment

contracts (closed-end credit sale agreements).  Customers choosing to finance the

terms of their consumer purchase with one of Springleaf's dealers complete an

application for retail installment transactions for review and approval by

Springleaf.  Upon approval by Springleaf and consummation of the purchase on

the financed terms, the dealer will assign the retail installment transaction to Springleaf.

On or about December 8, 2004, Plaintiff executed a credit application and entered into a retail charge agreement (the "Agreement") with VanScoy, Maurer & Bash, a dealer with whom Springleaf had a retail financing relationship, for the purchase of jewelry.  VanScoy Maurer & Bash assigned the Agreement to Springleaf on or about December 8, 2004.[1]  A copy of the Agreement is attached hereto as Exhibit A.

**B.     Plaintiff Agreed to Arbitrate All Claims Related to the Jewelry Purchase.**

Among other provisions, the Agreement contains a conspicuous and clear arbitration clause that states, in pertinent part:

> **ARBITRATION PROVISIONS.**  Except as provided below, either you or Creditor may choose that any claim or dispute between the parties or any claim, dispute or controversy involving you and any other party arising from or relating to this agreement, including the validity of this arbitration clause or the entire agreement, shall be resolved by binding arbitration.

(Ex. A, p. 2.)  The Agreement additionally states that the Arbitration Provisions shall be governed by the FAA, and that:

---

[1] At the time the parties executed the Agreement, Springleaf was called American General Financial Services, Inc.  However, to avoid confusion, it will be referred to in this Motion and Brief solely as "Springleaf."

By signing this Agreement, you agree to the Arbitration Provision above, which provides that you or Creditor can require that all disputes, claims or controversies between the parties be submitted to BINDING ARBITRATION.

**YOU UNDERSTAND THAT YOU ARE VOLUNTARILY WAIVING YOUR RIGHT TO A JURY TRIAL OR JUDGE TRIAL FOR SUCH DISPUTES.**

(Ex. A, p. 2 (emphasis in original).)  On the preceding page, signed by Plaintiff, the

following provision is found in bold, all-capital letters, just above the signature

line:

> **<u>Arbitration.</u>   BY SIGNING BELOW, YOU HAVE READ, UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS IN THIS DOCUMENT, INCLUDING THE ARBITRATION PROVISIONS THAT PROVIDE, AMONG OTHER THINGS, THAT EITHER YOU OR CREDITOR MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN YOU AND CREDITOR BE SUBMITTED TO BINDING ARBITRATION. IF YOU OR CREDITOR ELECT TO USE ARBITRATION, BOTH YOU AND CREDITOR WILL HAVE WAIVED YOUR AND CREDITOR'S RIGHT TO A TRIAL BY A JURY OR A JUDGE, THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR AND THE DECISION OF THE ARBITRATOR WILL BE FINAL.   ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM.**

(Ex. A, p. 1 (emphasis in original).)  By signing the Agreement, Plaintiff

acknowledged that he "**READ AND RECEIVED A COPY OF YOUR**

**AGREEMENT BEFORE ANY SALE WAS MADE UNDER THIS**

**ACCOUNT.**"  (Ex. A, p. 1 (emphasis in original).)  Accordingly, Plaintiff read

and acknowledged three times that his claims shall be submitted to binding arbitration upon his or Springleaf's election.

### C.   Plaintiff Defaulted on the Retail Charge Agreement.

Plaintiff's obligation under the Agreement went into default for late payment.  Plaintiff alleges that he retained the services of The Seiderman Law Firm, P.C., to settle the account, and also alleges that he did in fact settle the account.  (Complaint, Doc. 1, at ¶¶ 12-16.)

## IV.   STATEMENT OF QUESTIONS INVOLVED.

1.   Does the FAA govern the Agreement?
     Suggested Answer:  Yes.

2.   Is the Agreement enforceable under the FAA?
     Suggested Answer:  Yes.

3.   Does the FAA require the appointment of a substitute arbitrator when the arbitrator designated by the parties is unavailable?
     Suggested Answer:  Yes.

4.   Should the proceedings be stayed pending resolution of arbitration?
     Suggested Answer:  Yes.

## V.   ARGUMENT.

The Agreement and any related disputes are governed by the FAA, 9 U.S.C. § 1.  This federal law mandates that the Court compel Plaintiff to arbitrate his claims and stay litigation of those claims pending resolution of such arbitration.

### A.     The FAA Applies to and Governs the Agreement.

Congress enacted the FAA "in response to widespread judicial hostility to arbitration agreements." *Khan v. Dell, Inc.*, 669 F.3d 350, 354 (3d Cir. 2012).  By doing so, it "mandated the enforcement of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  Section 2 of the FAA provides that binding arbitration provisions "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Section 2 of the FAA reflects both a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740, 1745 (2011), and the "fundamental principle that arbitration is a matter of contract."  *Khan*, 669 F.3d at 354 (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. ___, 130 S. Ct. 2772, 2776 (2010)).  Thus, like other contracts, courts must enforce arbitration agreements in accordance with their terms.  *Concepcion*, 131 S. Ct. at 1745-46.

Under the FAA, "parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989).  Therefore, when an arbitration provision explicitly designates the FAA as the applicable law,

courts consistently uphold the intentions of the parties and enforce the provision.

*See, e.g., Thomas O'Connor & Co. v. Ins. Co. of N. Am.*, 697 F. Supp. 563, 566 (D.

Mass. 1988); *Rodriguez v. Am. Techs., Inc.*, 39 Cal. Rptr. 3d 437, 445 (Cal. Ct.

App. 2006) (if the parties expressly state that the FAA applies, then state

arbitration law is preempted); *Langfitt v. Jackson*, 644 S.E.2d 460, 465 (Ga. App.

2007) (same); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App.

2006) ("Courts honor the parties' agreement to be bound by the FAA, upholding

choice-of-law provisions providing for the application of the FAA.").

    The controlling Agreement in this action provides that it "shall be governed

by the [FAA]."  (Ex. A., p. 2.)  Therefore, there can be no dispute that the FAA

governs the Agreement and controls the disposition of this Motion.[2]

### B.    The Agreement Must Be Enforced Under the FAA.

    The objective of the FAA is and was "to assure those who desired arbitration

and whose contracts related to interstate commerce that their expectations would

not be undermined by federal judges or . . . by state courts or legislatures."

---

[2] Furthermore, the FAA would govern the Agreement absent the explicit provision
mandating its application because the FAA applies to arbitration agreements
arising out of a "contract evidencing a transaction involving commerce."  9 U.S.C.
§ 2.  Simply put, the Agreement's arbitration provisions at issue in this action arise
out of an Agreement which clearly involves interstate commerce.  *See Citizens
Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) ("No elaborate explanation is
needed to make evident the broad impact of commercial lending on the national
economy or Congress' power to regulate that activity pursuant to the Commerce
Clause.")

*Southland Corp.*, 465 U.S. at 13 (citation omitted).  Accordingly, under the FAA, written agreements to arbitrate controversies arising out of an existing contract are "valid, irrevocable and enforceable."  9 U.S.C. § 2.

The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution."  *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  Arbitration is highly favored because of its "simplicity, informality, and expedition."  *Mitsubishi Motors*, 473 U.S. 628.  "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results. . . .," *Concepcion*, 131 S. Ct. at 1749—a result that serves the interests of all parties to a contract.  As the United States Supreme Court has emphasized:

> We agree that Congress, when enacting [the FAA], had the needs of consumers, as well as others, in mind.  *See* S. Rep. No. 536, 68th Cong., 1st Sess., 3 (1924) (the Act, by avoiding "the delay and expense of litigation," will appeal "to big business and little business alike . . . corporate interests [and] . . . individuals").  Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation.  *See, e.g.*, H. R. Rep. No. 97-542, p. 13 (1982) ("The advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler procedural and evidentiary rules; it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties; it is often more flexible in regard to scheduling of times and places of hearings and discovery devices . . .").

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995).

To effectuate its purpose that the expectations of parties to an arbitration agreement are not undermined, the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA not only allows a party to petition for relief, it also "*mandates* that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis added).

In accordance with this federal policy emphatically favoring arbitration, the party opposing arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). Although "[t]he party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise," *Khan*, 669 F.3d at 353, the party fails to meet that burden by making "generalized attacks on arbitration that rest on suspicion of arbitration." *Randolph*, 531 U.S. at 89-90 (internal quotation omitted); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 269 (2009) ("At bottom, objections centered on the nature of arbitration do not offer a credible basis for discrediting the choice of that forum to resolve statutory [] claims.").

In deciding a motion to compel arbitration, a court must conduct a simple, two-step inquiry into (1) whether the parties agreed to arbitrate and (2) whether the

dispute falls within the scope of the arbitration provision. *See* 9 U.S.C. §§ 2, 4; *see also Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  If the answer to both considerations is "yes," then the FAA mandates the court to enforce the agreement and compel arbitration.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration. . . ." *Byrd*, 470 U.S. at 218 (emphasis in original); *see also Khan*, 669 F.3d at 456 ("[W]e must resolve [an ambiguity] *in favor* of arbitration.") (emphasis in original); *Trippe*, 401 F.3d at 532 ("When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability.").

The Agreement between the Parties unquestionably contains a written arbitration agreement, and Plaintiff expressed his clear intention to be bound by its terms by signing the Agreement and certifying such.  (*See* Ex. A.)  Thus, the Court's first inquiry—whether the parties agreed to arbitrate—is answered in the affirmative.

The second question is whether Plaintiff's claims fall within the scope of the Agreement's arbitration provisions.  In making this determination, and in accordance with the presumption in favor of arbitrability, the Court must resolve all doubts "in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Indeed, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Trippe*, 401 F.3d at 532 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1980)).  Where, as here, the arbitration Agreement is broad and bereft of any express provision excluding a particular claim or issue, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs.*, 475 U.S. at 650 (citation omitted).

Federal law mandates that arbitration be compelled here because Plaintiff's claims clearly are within the scope of the Agreement's arbitration provisions, and there is absolutely no evidence of a purpose to exclude the claims.  *See, e.g.*, *Byrd*, 470 U.S. at 218 (the FAA "*mandates* that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").  The language of the Agreement is unequivocal and all-encompassing:  By signing the agreement, Plaintiff agreed to arbitrate "any claim or dispute" with Springleaf or "any other party arising from or relating to" the Agreement.  (Ex. A, p. 1.)

Plaintiff claims that Springleaf violated the UTPCPL and the FDCPA through alleged attempts to collect the debt that Plaintiff incurred under the Agreement.  Specifically, Plaintiff claims that Springleaf offered to settle the

account existing under the Agreement (*see* Complaint, Doc. 1, at ¶ 13), did in fact

settle the account with Plaintiff (*see* Complaint, Doc. 1, at ¶¶ 14-16), and then

retained Defendant Delta Outsource Group to collect on the account created under

the Agreement (*see* Complaint, Doc. 1, at ¶ 21).

Even viewing Plaintiff's allegations in the light most favorable to him and

accepting all reasonable inferences therefrom, Plaintiff's claims still clearly and

unequivocally arise from and relate to the Agreement because they are all based on

allegations pertaining to the debt incurred by Plaintiff under the Agreement.

Plaintiff can make no serious argument that his claims do not arise out of or relate

to the Agreement and the relationship between the Parties created by virtue of the

Agreement's existence.  Simply put, all of the allegations underlying the Plaintiff's

claims touch matters encompassed by the Agreement's arbitration scope and

coverage provisions, and therefore they must be arbitrated.  *See, e.g.*, *Brayman*

*Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) ("If the

allegations underlying the claims touch matters covered by an arbitration clause in

a contract, then those claims must be arbitrated whatever the legal labels attached

to them." (citation and internal quotes omitted).)

Given the broad construction courts are required to give contractual

arbitration provisions and the command to resolve any doubts in favor of

arbitration, Plaintiff's claims must be pursued through arbitration in accordance

with the Agreement and applicable law.

### C.   The Court Must Appoint a Substitute Arbitrator to Hear the Dispute.

The Agreement assigns the National Arbitration Forum ("NAF") to hear the

dispute.  However, NAF since ceased administering consumer arbitration

disputes.[3]  Section 5 of the FAA specifically provides that in such a lapse of the

arbitral forum the court shall appoint an arbitrator:

> If in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or *if for any other reason there shall be a lapse in the naming of an arbitrator* . . . or in filling a vacancy, *then upon application of either party to the controversy the court shall designate and appoint an arbitrator* . . . who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein. . . .

9 U.S.C. § 5 (emphasis added).

The United States Court of Appeals for the Third Circuit recently held in

*Khan v. Dell*, *supra*, that, absent a showing by the party opposing arbitration that

the choice of the arbitrator was integral to the agreement to arbitrate, a court may

not void an arbitration agreement upon the named arbitrator's unavailability.  *See*

---

[3] *See* NAF website, *National Arbitration Forum to Cease Administering All Consumer Arbitrations in Response to Mounting Legal and Legislative Challenges*, available at http://www.adrforum.com/newsroom.aspx?&itemID=1528&news=3 (published July 19, 2009; last visited Nov. 12, 2012).

*Khan*, 669 F.3d at 356-57.  Instead, a court must appoint a substitute arbitrator as required by the FAA.  *See* 9 U.S.C. § 5 (mandating that in the event of a lapse "the court shall designate and appoint an arbitrator"); *Khan*, 350 F.3d at 357 ("Section 5 of the FAA requires a court to address such unavailability by appointing a substitute arbitrator.").

In *Khan*, the issue before the Third Circuit was whether the designation of NAF as the arbitrator in the relevant arbitration provision was an integral part of the agreement between the parties, thus preventing the appointment of a substitute arbitrator.  The lower court had decided that parties' designation of an arbitrator was exclusive to NAF and integral to the agreement and, upon NAF's unavailability, the agreement was void.  The Third Circuit determined that the clear language of section 5 of the FAA and the "liberal policy in favor of arbitration," *id.* at 356 (internal citation omitted), compelled rejection of the District Court's reasoning and reversal of its decision.  The Third Circuit held instead that, unless clearly and unambiguously mandated by the arbitration agreement, a court may not void an arbitration agreement based upon the unavailability of the designated arbitrator.  *Id.*  ("[I]t is not clear whether the designation of NAF is ancillary or is as important a consideration as the agreement to arbitrate itself . . . Therefore, we must resolve this ambiguity in *favor* of

arbitration.") (citing *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000)).

The Parties' obvious intent to arbitrate any and all claims arising from or relating to the Agreement may not be frustrated because the named arbitrator is unavailable.  Under Third Circuit precedent, any potential argument advanced by Plaintiff "that the arbitration provision was unenforceable because the NAF, which the arbitration provision designated as the arbitral forum, was no longer permitted to conduct consumer arbitrations," must fail.  *Khan*, 669 F.3d at 353.  Therefore, under section 5 of the FAA, and pursuant to this application by Defendant, the Court should appoint a new arbitrator to hear this dispute.[4]

**D.   The Proceedings Must Be Stayed Pending Resolution of Arbitration.**

The FAA orders any action asserting claims that are subject to an arbitration agreement be stayed pending arbitration of the covered claims.  *See* 9 U.S.C. § 3.  Specifically, section 3 provides that:

---

[4] Specifically, Springleaf requests that the Court appoint the American Arbitration Association ("AAA") or JAMS (formerly Judicial Arbitration and Mediation Services or JAMS-Endispute) as the arbitral forum for the dispute.  Both AAA and JAMS are nationally-recognized arbitral forums that have established rules of procedure and employ panels of experienced and trained attorneys and former judges.  *See generally* AAA website, available at http://www.adr.org/ (last visited Nov. 12, 2012), and JAMS website, available at http://www.jamsadr.com/ (last visited Nov. 12, 2012).  The AAA Commercial Arbitration Rules & Mediation Procedures and the JAMS Comprehensive Arbitration Rules & Procedures are attached hereto as Exhibits B and C, respectively.

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

9 U.S.C. § 3.  Not only is the power to stay proceedings pending arbitration conferred by section 3 of the FAA, that power is also "inherent in the court itself." *Ludgate v. Bingham*, No. 3:11-cv-0071, 2012 U.S. Dist. LEXIS 126399, at *16 (M.D. Pa. Sept. 6, 2012) (Mariani, J.) (quoting *G&V Gen. Contractors, Inc. v. Goode*, Civ. Action No. 86-7048, 1987 U.S. Dist. LEXIS 3097, at *20-22 (E.D. Pa. Apr. 21, 1987) (VanArtsdalen, S.J.)).   All the claims at issue in this litigation are subject to arbitration.  Therefore, the litigation should be stayed while the claims are arbitrated.

## VI.   CONCLUSION.

By virtue of the unequivocal terms of the Agreement and its relationship to interstate commerce, the Agreement and this Motion are governed by the FAA. Under the FAA, the arbitration provision of the Agreement, through which Plaintiff agreed to arbitrate all claims asserted in his Complaint, is "valid, irrevocable and enforceable."  9 U.S.C. § 2.  Therefore, the Court should grant Springleaf's Motion to Compel Arbitration, appoint a substitute arbitrator, and stay

all proceedings in this litigation, including discovery, pending resolution in

arbitration.

Respectfully submitted,

s/Robert J. Hannen
Robert J. Hannen, Esquire
PA ID No. 63432
Eckert Seamans Cherin & Mellott, LLC
Suite 200, Summitt Corporate Center
1001 Corporate Drive
Canonsburg, PA  15317-8563
Telephone:  724-873-2870
Facsimile:   724-743-2901
E-mail:       rhannen@eckertseamans.com

and

Erin R. Kawa, Esquire
PA ID No. 308302
Eckert Seamans Cherin & Mellott, LLC
213 Market Street, Eighth Floor
Harrisburg, PA 17101
Telephone:  717-237-6000
Facsimile:   717-237-6019
E-mail:       ekawa@eckertseamans.com

Date:  November 13, 2012   Attorneys for Springleaf Financial Services, Inc.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8

I hereby certify that the Springleaf Financial Services, Inc.'s Brief in

Support of Motion to Compel Arbitration of Plaintiff's complaint and Stay

Litigation contains 4,366 words, as counted by the "Word Count" feature in

Microsoft® Word.


/s/ Erin R. Kawa
_____
Erin R. Kawa, Esquire
Attorneys for Springleaf Financial

Date:  November 13, 2012        Services, Inc.

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that I served  a copy of the foregoing document upon the persons

and in the manner indicated below via electronic filing, which service satisfies the

requirements of the Federal Rules of Civil Procedure.

Matthew B. Weisberg, Esquire
Weisberg Law, P.C.
7 South Morton Avenue
Morton, PA  19070
Telephone:  610-690-0801
Facsimile:   610-690-0880
E-mail:       mweisberg@weisberglawoffices.com


s/Erin R. Kawa
Erin R. Kawa, Esquire

Date: November 13, 2012          Attorneys for Springleaf Financial Services, Inc.

19